Battle, J.
 

 The bill was filed in the Court of Equity for Burke county, for the purpose of impeaching a final decree-of this Court, upon the ground that it was obtained by fraud and surprise upon the present complainants, and for-matter's of a public nature which have since occurred, and which would render its enforcement unjust and oppressive. Upon the filing of the bill an injunction was granted, whereupon the defendants filed their answers, and moved for a dissolution of the injunction, which being refused, and an order made that it should be continued until the hearing, the defendants appealed to this court.
 

 In the argument here the counsel for the defendants contends that the motion to dissolve ought to have been allowed, and he bases his argument upon several grounds.
 

 
 *274
 
 1. It is insisted that the Court of Equity for Burke county had no jurisdiction to entertain a bill for reviewing a decree of the Supreme Court, or to impeach it for fraud or surprise, or for any other matter stated in the bill; and, in support of this position, the case of the
 
 American Bible Society
 
 v.
 
 Hol
 
 lister, 1 Jon. Eq. 10, and many other authorities are relied upon. If this were a bill to review a decree of this court for error of law appearing in the decree, there can be no doubt that it could not be sustained, but it purports to be a bill of a very different character, to wit, one to impeach a decree of this court for fraud and surprise; and as such, we think the Court of Equity below not only had jurisdiction, but is the only court- which did have it. By reference to the 32d chapter of the Revised Code, entitled “ Courts of Equity,” it will be seen that to them is confided full Chancery powers and authority, and they are the only courts of the State which have original jurisdiction in the exercise of such powers and authority. A bill tp impeach a decree is an original bill, while one to review a decree is, strictly speaking, not so, but is treated of in the -books as a bill in the nature of an original bill, being an incident to some former suit. See
 
 American Bible Society
 
 v. Hollister,
 
 ubi
 
 supra, Mitf. Pl. 138, (marg. p. 93); Adams’ Eq. 419. Bills of review may now be filed in the Supreme Court for the purpose of reviewing its own final decrees, (see Rev. Code, c. 33, s. 19,) which could not have been done when the above cited case of
 
 American Bible Society
 
 v.
 
 Hollister
 
 was decided. A bill to impeach a decree being strictly original, must be brought in that court which has original jurisdiction of such bills. There is no more reason why it may not be filed in the Court of Equity below to impeach a decree of the Supreme Court than to impeach the decree of any other court. Being an original bill, the defendant must put in an answer, to which a replication may be filed, and this will render the taking of proof necessary, which can only be done in the Court of
 
 *275
 
 Equity below, and cannot be done in the Supreme Court as at present constituted. See Eev. Code, c. 33. It is admitted that the Court of Equity below may enjoin a judgment at law of the Supreme Court, as was done in the case of
 
 Patton
 
 v. Marr, Bus. 377; and there can be no more incongruity in the impeachment of a decree of this court by a proceeding in the Court of Equity below, than in the enjoining of one of its judgments at law. The interference of a Court of Equity is absolutely necessary to prevent a party from taking advantage of a fraud, because, after a final decree in equity, as well as after a final judgment at law, the Supreme Court has no means to afford an adequate remedy. We conclude then that the Court of Equity for Burke county did have jurisdiction of the cause, and that the injunction ought not be dissolved upon the • grounds .taken by the defendants’ counsel in his first and fourth objections.
 

 2. The bill is not one for newly discovered testimony as is assumed in the counsel’s second objection, and for that reason the objection misses its aim, and is unavailing.
 

 3. A bill to impeach a decree for fraud and surprise being an original bill, may be filed without the leave of the court. Mitf. PI. 138, (mar. p. 93). This disposes of the objection that the leave of the court, and, in this case, the leave of the Supreme Court ought to have been obtained before the bill was filed.
 

 4. The fourth objection relates to the jurisdiction of the court where the bill was filed, and has already been noticed and disposed of.
 

 5. The fifth objection to the order continuing the injunction is, that all the material allegations of the bill are fully and positively denied by the answers of the defendants. The only statements of the bill which it is necessary to notice in this connection are: that the parties could and would have settled all the matters in relation to the estate of Eobt. Kincaid, the plaintiff’s testator, without suit, but for a claim
 
 *276
 
 set up by J. W. Conly, who contended that he was entitled to a share of the estate as the administrator of his first wife, Patsey Conly, which the other legatees denied, and that the bill was filed solely for the purpose of having that question settled by a decree of the Court of Equity; that with that view a bill was filed in the Court of Equity for Burke County at the Spring Term of 1864, when the answers were put in and the cause immediately, by the consent of all the parties, transferred to the Supreme Court; that an interlocutory decree was made at that court at the ensuing June Term in lavor of the claim of J.
 
 W.
 
 Conly to a share, in right of his deceased wife; that at the next succeeding term of that court the case was brought on to be heard upon further directions, whereupon a reference for an account was ordered, upon which a report was made, returned, confirmed and a final decree passed; that this was all done at the same term without notice to the present plaintiffs, and in the absence of themselves and their counsel; that, as defendants in that suit, they had employed an eminent member of the bar to draw their answers, who told them that, as the suit was filed solely for the purpose of getting a construction of the will of their testator, it was unnecessary for them to give it any further attention; that in the interval between the two terms of the Supreme Court above mentioned their counsel was killed in the late war, and that they, believing that the suit had accomplished its purpose by settling the question of construction, and that they and the other parties would be able to settle all the other matters themselves, did not deem it necessary to employ other counsel; that, before the filing of the bill, they had taken Confederate treasury notes in payment of debts due their testator, some of which they had funded in Confederate bonds, and all this was done with the full knowledge, consent and approbation of all the parties interested in the estate of their testator; and that, by the result of the late war, since the decree was made,
 
 *277
 
 these notes and bonds had become of no value. Many of these allegations are sufficiently denied in the answers. But it is not denied that the sole object of the suit was what it was stated in the bill to have been, but it is alleged that an account and settlement were also demanded by the bill and submitted to by the executors. That is true, but it cannot be allowed to have much influence in the present controversy, because a prayer for such account and settlement formed a necessary part of the bill in order to give the court jurisdiction to hear and determine the question of construction. The statement of the death of the counsel is admitted, but it is alleged that the executors had ample time to employ other counsel. In ordinary times the executors could have taken no benefit from their want of counsel, but the state of the country during the latter half of the year 1864, when business of every kind, except what pertained to war, was nearly suspended, and anxiety and alarm pervaded the whole State, (of all which we must take judicial notice) must be taken into consideration in deciding upon the conduct of the executors. The fact that the Confederate funds were of some value when they were received by the executors, and that since the decree, by reason of a great public event, they became entirely worthless, is admitted. It is denied, however, that the funds were taken with the consent and approbation of the present defendants, or at least of all of them. . In considering the answers, taking the denials and admissions all together, we think that enough appears from them to show that the executors were, under the extraordinary circumstances in which they were placed, taken by surprise by the final decree which was entered in this court, and 'that it would be a fraud to have it enforced against them.
 
 We
 
 are further of opinion that they, of all the parties to the controversy, ought not to be the only sufferers by the event of the war, which annihilated the Confederate notes and bonds in their hands, unless upon the
 
 *278
 
 final hearing of the case it may appear that they were in default.
 

 6. This ground of objection is the same with the last, except that it applies to a part of the defendants only. We will not give it a particular notice, because we think that the principles which furnish an answer to the last objection are sufficiently comprehensive to cover this. The principles, being mainly upon facts and events of a public nature, apply with as much force to the married and minor defendants as to the others, and we cannot admit any distinction between them.
 

 The view which we have taken of the case renders it unnecessary for 11s to comment upon the numerous cases and authorities referred to by the counsel on both sides in the learned arguments which they have submitted to us, and by the aid ot which our labors have been much lightened.
 

 The order of the Court of Equity below is affirmed, and this must be certified as the law directs.
 

 Per Curiam.
 

 Order affirmed.