MARION WASHEL v. TANKAR GAS, INC. AND OTHERS.
WESLEY WILSON, RESPONDENT.[1]

December 19, 1941.

Nos. 32,972, 32,973.

[1]Reported in 2 N. W. (2d) 43.

*Reynolds & McLeod,* for relators.

*Louis B. Schwartz* and *Leonard H. Murray,* for relator Tankar Gas, Inc. on petition for reargument only.

*Ralph L. Helstein* and *Neil M. Cronin,* for petitioner-respondent.

HOLT, JUSTICE.

*Certiorari* by each relator to review an award by the industrial commission.

There is not much dispute as to the main facts, which may be thus summarized: Respondent's husband, Raymond Washel, was killed February 18, 1939, while at work in a filling station at 1101 South Eighth street in the city of Minneapolis. Death was caused by an accident (explosion) arising out of and in the course of Washel's employment. The controversy is as to whether Washel at the time was in the employ of C. Wesley Wilson or relator Tankar Gas, Inc. The commission dismissed the proceeding as to Wilson, and no error is assigned as to that action. Wilson leased the filling station mentioned of Tankar Gas, Inc. on May 17, 1938, by written lease. He hired Washel to attend the station for the wage of $30 per week, and a part-time assistant at 30 cents per hour, and paid these men out of his own pocket. The Tankar Gas, Inc. is a wholesale and retail dealer of gasoline and petroleum products. For this purpose, it had in May 1938, in the Twin Cities, a main office, a bulk plant, and 22 filling stations. Of the latter, it leased out 16 and operated 6, hiring, paying, and discharging the attendants at pleasure. The relator insurer carried its workmen's compensation risk under a policy which specified and covered each of the stations operated by it, but did not specify

or include any of its 16 leased filling stations. Before obtaining the lease herein involved, Wilson had for some time operated a filling station at 3700 Cedar avenue in Minneapolis, under a written lease from Tankar Gas, Inc. Washel had also worked there.

From the decision of the majority (of the commission), it appears that the lease was considered a scheme or device by which the Tankar Gas, Inc. sought to evade the obligation imposed by the workmen's compensation law to provide insurance for accidental injuries or death of those engaged in carrying on its business. So concluding, the commission did not regard as conclusive this test or definition: An employer "shall mean every person not excluded by section 8, who employs another to perform a service for hire and to whom the 'employer' directly pays wages" (Mason St. 1927, § 4326[d]). The written lease to Wilson consists of five pages of closely spaced typewriting. The lessee must procure from the lessor all products handled at the station. The lessee must daily report to the lessor all sales made. While the lessee is at liberty to cut prices to some extent, it must not sell for less than invoice. The lessor made a monthly check of the lessee's tank records. There is much in the lease indicating that the lessor was much interested in the business of the filling station leased, and to that end supervised, directed, and counseled the lessee. So far as the evidence goes, the lessor supervised the leased filling stations much the same as the six it operated itself. It is true that the pleadings contained no allegations that the lease was a scheme or device to evade the compensation law, nor are there any specific findings to that effect. But the ultimate finding that Washel was the employe of Tankar Gas, Inc. at the time of his accidental death is based on that theory by the majority opinion; that Wilson was an agent or servant in charge of the filling station and not a lessee thereof, and therefore authorized to employ Washel for Tankar Gas, Inc. We think the following decisions sustain the finding that Washel was the employe of Tankar Gas, Inc. when he met death: Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004; Nesseth v. Skelly Oil Co. 176 Minn. 373, 223 N. W.

608. It makes little difference whether the agreement between the parties is in form of an agency contract or a lease. So far as Tankar Gas, Inc. is held to be the employer of Washel, we also cite Bolin v. Scheurer, 210 Minn. 15, 297 N. W. 106; Byhardt v. Ballord, 209 Minn. 391, 296 N. W. 504; Rice v. Keystone View Co. 210 Minn. 227, 297 N. W. 841.

The relator insurer is in a different situation from that of relator employer. The insurer was not a party to the scheme or device to evade the burdens of the workmen's compensation law. The lease was dated May 17, 1938, and the policy of relator insurer was not issued until July 1, 1938, and covers numerous specifically named filling stations in this and other states, but not either of the two stations leased to Wesley Wilson, nor, so far as disclosed, any leased filling station. The lease involved was not recorded, and there is no evidence that relator insurer ever knew of this filling station or who operated it. The portions of our workmen's compensation law that might apply to the situation here are Mason St. 1927, §§ 4288, 4289, and 4290 (1). Section 4288 makes it obligatory on the employer to carry compensation insurance, and a violation carries a penalty. There is no claim that the policy violated § 4289. And of course the insurer did not in any way participate or know of the scheme or device denounced by § 4290 (1). Skuey v. Bjerkan, 173 Minn. 354, 355, 217 N. W. 358, is relied on by relator insurer. But there the employer did not question the employment, his insurer only denied coverage, and the court thus stated the question for decision: "Our inquiry is whether, under our compensation law, the coverage may be limited solely by agreement between the insurer and the insured." The inquiry was answered in the negative. In the instant case there was no agreement between relators to violate the law. As before stated, the insurer had no knowledge of the lease. Neither Wilson nor Washel was on the insured's payroll which the insurer audited to determine its premium. The workmen's compensation laws of other states are not so framed as to afford much help from decisions there rendered on a question like the present. How-

ever, the following to which we have been cited aid the insurer's contention: American Mut. L. Ins. Co. v. Chodosh, 123 N. J. L. 81, 8 A. (2d) 64; In re Claim of Simpkins v. Steffen, 255 N. Y. 65, 174 N. E. 64.

Our conclusion is that as to relator insurer the proceeding is dismissed, but as to relator Tankar Gas, Inc. the writ is discharged and the decision of the industrial commission is affirmed.

Respondent may tax $100 as attorney's fees.

HILTON, JUSTICE (specially concurring).

Because I believe that there is enough of evidence in the record to make a question of fact of whether Wilson was an employe of Tankar Gas, Inc., I believe that the commission's determination of the existence of that relationship should be sustained. There is evidence both in and outside of the lease which could persuade a trier of fact that the requisite degree of control is present. The lease is but partial evidence of the nature of the relationship obtaining between the parties. Rick v. Noble, 196 Minn. 185, 188, 264 N. W. 685. Upon the whole record, the finding of employment is supported, and for that reason I consider a discussion of § 4290 not only unnecessary but inappropriate.

STONE, JUSTICE (dissenting).

From the procedural viewpoint, this decision in result admittedly does some violence to elementary principles. Everything by way of pleading is silent concerning the supposed subterfuge of Tankar Gas, Inc., upon which alone the decision must stand. The referee made no such finding. All he did was by way of note appended to his decision which is but a citation of the statute. The decision of the industrial commission does not make, as it should, the explicit finding of fact without which its decision has no support. However, the majority opinion by Commissioner Williams manifests the intention to hold that there was an illegal

"artifice or device"[2] to enable Tankar Gas, Inc. to "execute work without" itself being responsible to the workmen.

That holding nullifies what the parties thought was a lease, and it does so by naked assertion rather than reasoning. Able effort is made to demonstrate that the statute's adjective "fraudulent" does not qualify all the nouns that follow, that is, that while it does modify "scheme" it does not in similar fashion require that "artifice" or "device" be fraudulent in order to come within the statutory condemnation. With that I cannot agree. It seems to me that the intention was to distinguish between any "scheme, artifice or device" which is fraudulent and those which are not.

Putting all that aside, how can it be said that the lease from Tankar Gas, Inc. to Wilson was not a lease, attended with the usual incidents and results of a lease? How can it be said that, after Wilson went into possession under the lease, Tankar Gas, Inc. was "executing" any work on the leased premises. It was executing some work there but only as lessor in conducting the supervision of accounting (nothing more) which it was entitled to conduct.

Tankar had no right of control over Washel as employe or otherwise. Hence I concur in what Commissioner Debel said in dissenting from the opinion of his associates:

"I am of the opinion that the evidence shows that defendant Wilson was engaged in a business venture of his own; that he hired Raymond Washel as his employe at wages fixed by agreement between them; that he exercised direction and control over Washel in respect to the work done by the latter; that he paid Washel wages out of earnings made by him in the operation of the stations; that the Tankar Gas Company, the other defendant, had no part in the hiring of Washel, did not exercise any direction or

---

[2]"Any person who creates or carries into operation any fraudulent scheme, artifice or device to enable him to execute work without himself being responsible to the workman for the provisions of this act, shall himself be included in the term 'employer' and be subject to all the liabilities of the employers under this act."  Mason St. 1940 Supp. § 4290(1).

control over him, and did not pay him wages or any other compensation for his work. Under these circumstances I do not think it is proper to determine that Washel was an employe of the Tankar Gas Company."

Denial of compensation in this case would tend in no wise, as said for the majority of the commission, to "relieve the oil industry of its financial responsibility for the death" of employes arising out of and in the course of employment. It would shift some burden from the wholesale to the retail end of the industry. In that is nothing unlawful.

It would be regrettable from the standpoint of Washel's dependents to deny compensation. It is not an agreeable thing to suggest that it should be denied. But our duty is to apply the statute as it reads. We are dealing with a highly important question that may return to vex in other sorts of litigation. Suppose that Wilson, the lessee, or an employe of his, had committed an assault on a customer, occasioned by the station's business and committed in the course of it. This decision, if followed, would compel a holding that Tankar Gas, Inc. was liable under the rule *respondeat superior*.

If "such words as 'right' are a constant solicitation to fallacy" (Mr. Justice Holmes in Jackman v. Rosenbaum Co. 260 U. S. 22, 31, 43 S. Ct. 9, 10, 67 L. ed. 107), all the more so are such words as "scheme, artifice or device." They are especially so, and easily become prolific source of error, when, appearing in a statute, they are arbitrarily separated from and denied the limiting effect of such qualifiers as "fraudulent."

Of all treacherous words, none is more so than "scheme, artifice or device." Law itself has much of all three. Without them, it simply would not work. Neither can business. The words alone or together mean nothing precise and nothing illegal. Qualified by "fraudulent," they take on a workable significance. But that cannot be fraudulent which is obedient to law.

Just as delusive, if carelessly handled, is "evasion." All of us are constantly evading undesirable consequences in the sense that we avoid them. In evasion alone is nothing unethical or unlawful. But "evasion" is too easily and too often used to denounce lawful attempt to keep without its reach as violation of law. Action is lawful when both its process and result are without rather than within the law's condemnation. In such case, it is idle to talk of "evasion." As said in Bullen v. Wisconsin, 240 U. S. 625, 630, 36 S. Ct. 473, 474, 60 L. ed. 830:

"We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion what is meant is that it is on the wrong side of the line indicated by the policy if not the mere letter of the law."

The lease bound Wilson to sell only the lessor's fuel and lubricating oils. But it left him free to procure other merchandise, for sale at the station, from any other source agreeable to him. It does not prohibit him from conducting on the premises any other legitimate business. Except that he was restricted in the purchase of oils to the lessor, he had all the freedom that any lawabiding lessee could have. It may be assumed that by the lease Tankar Gas, Inc. deliberately intended to avoid liability for compensation to its lessee and his employes. The lease expressly made the lessee liable for a chain-store tax, if any, in respect to the operation of the station. So far as possible, the lessor contracted against liability of any kind arising from operation of the station. But what of it? There is nothing unlawful about any contract until in purpose or effect it violates law. I cannot see wherein this lease did so. Hence I see no reason why it should not be given the same effect that it would have in any other sort of litigation. Nobody claims that there was anything "fraudulent" about it.

By necessary implication, this decision denounces and largely invalidates what has heretofore been considered both legitimate business practice and lawful disposition of property. It is common for owners of large establishments with many branches to lease some of the latter. The result is an independent contract, insulating the owner lessor from many of the liabilities which otherwise it might incur from its own operation of the leased branch. The contract is none the less a lease where, as here, it has special provisions concerning source and payment of rent, which require the lessor as matter of sound practice to reserve some right to supervise the lessee's accounting.

Things of that sort give to the lessor no right of control over the lessee in hiring and supervision of the lessee's employes. They remove from the case, so far as the lessor is concerned, that right of control over the lessee's servants which heretofore and all through our cases has been considered essential to the relation of employer and employe between the controller and the controlled. Absent such right of control, the relation of employer and employe simply cannot exist.

Because there was no contract of employment between Tankar Gas, Inc. and the deceased, because over the conduct of the latter Tankar Gas, Inc. had no control, it is respectfully submitted that it is not liable for compensation.

LORING, JUSTICE (dissenting).

I agree with the views expressed by Mr. Justice Stone. I would add only that as a matter of business policy Tankar Gas, Inc. might adopt any legitimate method of doing business which its interests suggested; and if it chose to avoid the burdens of the chain-store tax or any other responsibility by leasing its stations to operators, it might do so without by so doing subjecting itself to the charge of adopting a fraudulent scheme or device. On its face, the lease is not indicative of fraud. If what was done by Tankar Gas, Inc. fell within its terms, there was no evidence of fraud in its acts. To my mind, the record is barren of evidence

*dehors* the lease which shows that the lease was a fraudulent device or that Tankar exercised the control over Wilson or Washel which in the absence of contract justifies a holding that the relation of master and servant existed.

I think there should be a reversal.

MR. CHIEF JUSTICE GALLAGHER, being engaged on the pardon board, took no part in the consideration or decision of this case.