## TANKAR GAS, INC. v. LUMBERMEN'S MUTUAL CASUALTY COMPANY.[1]

May 21, 1943.

No. 33,437.

[1]Reported in 9 N. W. (2d) 754.

See 211 Minn. 403, 2 N. W. (2d) 43.

*Freeman, King & Geer,* for appellant.

*Brill & Maslon* and *Louis B. Schwartz,* for respondent.

YOUNGDAHL, JUSTICE.

This action was brought by Tankar Gas, Inc. to set aside on the ground of fraud a certain judgment entered in the district court of Hennepin county pursuant to Minn. St. 1941, § 176.59 (Mason St. 1940 Supp. § 4318), against Tankar in favor of one Marion Washel, representing compensation benefits for the accidental death of the latter's husband, Tankar's employe. The defendant, Lumbermen's Mutual Casualty Company, was joined as insurer-relator in the compensation proceeding before the referee appointed by the industrial commission, who found that Tankar was the employer of the deceased Washel; that defendant was Tankar's insurer under the workmen's compensation law; that employe's death was compensable; and that benefits should accordingly be awarded his surviving widow. The referee's decision was affirmed by the industrial commission. This court, on separate writs of *certiorari* for Tankar and Lumbermen's, reviewed the decision of the industrial commission and affirmed it insofar as Tankar's liability was concerned but dismissed the action as to Lumbermen's (Washel v. Tankar Gas, Inc. 211 Minn. 403, 2 N. W. [2d] 43), for the reason that it appeared that the policy of insurance and the attached rider issued by Lumbermen's to Tankar did not cover the specific business operation of Tankar where Washel met his death. Pursuant to the mandate of this court, judgment was entered against Tankar alone. Plaintiff made benefit payments to the extent of $3,334.40, and judgment was entered against it for the balance, which was ordered

to be paid. In its complaint to set aside the judgment pursuant to the provisions of Minn. St. 1941, § 548.14 (Mason St. 1927, § 9405), Tankar alleges that Lumbermen's was able to effect its exoneration of liability by fraudulent acts and representations both as to Tankar and this court, under the following circumstances, to-wit: That as Tankar's insurer it undertook the defense of the claim for compensation on behalf of both Tankar and itself and admitted in its separate answer that it was the insurance carrier for Tankar; that the only issue tendered was whether Washel was an employe of plaintiff; that during the hearing before the referee Lumbermen's offered in evidence a rider claimed by it to have been attached to the policy of insurance issued to Tankar, which excluded the particular business of Tankar where Washel met accidental death; that on appeal to the industrial commission Lumbermen's filed its petition for permission to withdraw its admissions that it was Tankar's insurer and to substitute an allegation denying the same, and in support of its request filed an affidavit stating as a fact that the rider excluding the particular operation of Tankar where Washel met his death was part and parcel of the policy of insurance as originally issued to Tankar; that this application of Lumbermen's to amend its pleadings was denied by the industrial commission; that thereafter Lumbermen's further carried on the defense of itself and Tankar on separate writs of *certiorari* to the supreme court and filed separate briefs to support the same, made an appearance, and argued the cause before the supreme court both on behalf of Tankar and itself; that in the brief filed by Lumbermen's on behalf of Tankar assignments of error were made claiming and complaining on behalf of Tankar that the industrial commission had erred in holding that Lumbermen's was Tankar's insurer and asking for a reversal on this ground. Tankar contends that at all times it believed that Lumbermen's was conducting its defense for its best interests; that at all times it claimed that Lumbermen's was its insurer and, further, that it was not apprised of the alleged fraudulent acts and misrepresentations until after the supreme court had affirmed the industrial commission's decision as to Tankar's liability and dis-

missed the proceeding as to Lumbermen's, thereby exonerating it from liability. To this statement of facts, as incorporated in the complaint, Lumbermen's filed its demurrer. From an order overruling the same, wherein the trial court certified the questions presented as important and doubtful, Lumbermen's appealed.

The sole assignment of error, that the trial court erred in overruling Lumbermen's demurrer, raises the following questions for consideration on review:

(1) That the action does not properly fall within the purview of § 548.14 (§ 9405).

(2) That the judgment of dismissal in this court in favor of Lumbermen's is final unless modified by this court.

(3) That Tankar's complaint does not set forth a cause of action for fraud.

(4) That Tankar was negligent in failing to take proper steps to protect its interests.

1. Section 548.14 (§ 9405), so far as here material, provides:

"Any judgment obtained in a court of record by means of perjury, subornation of perjury, or any fraudulent act, practice, or representation of the prevailing party, may be set aside in an action brought for that purpose by the aggrieved party in the same judicial district within three years after the discovery by him of such perjury or fraud. * * * but no right or interest of a third party acquired under such judgment in good faith, and without knowledge of the wrong complained of, shall be affected by the action herein provided for; * * *"

Defendant urges that Tankar is not entitled to bring this action under the foregoing statute, for the reason that it is not "the aggrieved party" nor is Lumbermen's "the prevailing party" within the purview thereof, and to permit such judgment to be set aside would jeopardize and affect the vested rights of a third party, namely, Marion Washel, under the judgment. In support of its position, Lumbermen's relies upon the factual situation and the result reached in Washel v. Tankar Gas, Inc. 211 Minn. 403, 2 N. W.

(2d) 43, *supra*, as indicated by this statement in its brief: "We are the prevailing party and plaintiff is the aggrieved party as far as Marian [sic] Washel is concerned, but not as between ourselves." This, we believe, is untenable. It seems reasonable to us that, since Lumbermen's was freed of liability insofar as the claimant Washel was concerned and Tankar obliged to assume the entire burden of the judgment, which would otherwise have been paid by Lumbermen's, Tankar's status is that of "the aggrieved party," not only as to its judgment creditor, Washel, but also as to Lumbermen's, which was successful in shifting this liability to Tankar alone. Defendant also asserts that it was not a party to the judgment and therefore not "a prevailing party." Insofar as joint liability on the judgment is concerned, this is true, but we do not believe that such a strict and technical interpretation of this provision of the statute was intended, and the decisions so indicate. Rather, we think, it was intended to include all those who were parties to the action, although having varying interests therein. The adversary character of interests between the parties necessary to establish the status of *aggrieved* and *prevailing* party is not limited solely to those litigants who in the first class find themselves obliged to pay a judgment and those in the second class who are entitled to receive the fruits of the litigation. The relationship extends also to other parties to the action, as the defendant in this case, which benefited materially from the result and for all practical purposes prevailed when the action was dismissed in this court. Lenhart v. Lenhart Wagon Co. 210 Minn. 164, 298 N. W. 37, 135 A. L. R. 833. Defendant relies upon Stewart v. Duncan, 40 Minn. 410, 42 N. W. 89, as authority for its position here. In that case, however, Stewart was not a party to the action in which the judgment complained of was rendered, and it was properly held that he was not an aggrieved party within the contemplation of the statute. That case is, therefore, distinguishable on the facts.

A statute should be reasonably construed so as to give a practical effect to its provisions. The correct rule in such cases was aptly stated by Mr. Justice Mitchell in International Trust Co. v.

American L. & T. Co. 62 Minn. 501, 65 N. W. 78, 79, 632, as follows:

"It is always an unsafe way of construing a statute or contract to divide it, by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascertained from the context, the nature of the subject treated of, and the purpose or intention of the parties who executed the contract, or of the body which enacted or framed the statute or constitution."

Construing the foregoing statute in this light, we reach the conclusion that plaintiff was an "aggrieved party" and defendant a "prevailing party."

We do not agree with defendant's contention that plaintiff is not entitled to relief under the statute because of the vested rights of Marion Washel. That she has vested third-party rights within the meaning of the statute cannot be denied. Whatever relief plaintiff ultimately receives in this action can in no way affect her rights to a full recovery under the workmen's compensation act. The statute here invoked contemplates the exercise of the equitable powers of the court. McElrath v. McElrath, 120 Minn. 380, 139 N. W. 708, 44 L.R.A.(N.S.) 505; Bloomquist v. Thomas, 215 Minn. 35, 9 N. W. (2d) 337. Under such circumstances as here prevail, we assume that the trial court will make adequate provision fully and completely to protect the rights of Marion Washel.

■ The question of the trial court's jurisdiction to entertain this action is raised by Lumbermen's contention that, since the supreme court has rendered its decision in Washel v. Tankar Gas, Inc. *supra,* that decision is final and the trial court is without jurisdiction or authority to do otherwise than follow the mandate issued pursuant thereto. There can be no disagreement with the rule that the lower court has no power to alter, amend, or modify the mandate of the

supreme court. Piper v. Sawyer, 78 Minn. 221, 80 N. W. 970; Minnesota L. & I. Co. v. Munch, 118 Minn. 340, 136 N. W. 1026; Orcutt v. Trustees of Wesley M. E. Church, 174 Minn. 153, 218 N. W. 550; County of Traverse v. Veigel, 179 Minn. 589, 229 N. W. 882; Malcolmson v. Goodhue County Nat. Bank, 200 Minn. 486, 274 N. W. 652; Personal Loan Co. v. Personal Finance Co. 213 Minn. 239, 6 N. W. (2d) 247. To permit a trial court to disobey in the slightest degree the mandate of this tribunal would inevitably disrupt the harmonious operation of our entire judicial system and produce disorganization and incalculable confusion. It is quite another matter, however, to suggest that a lower court, possessing general original jurisdiction in law and equity, has not the power to set aside a judgment entered pursuant to a mandate of the supreme court on the ground that there had been fraud in the proceedings before the supreme court, thereby preventing a party from having his defenses properly presented and his full day in court, to which he is entitled. To so hold would be to stultify the courts and render them impotent in the face of conceded fraud. 3 Freeman, Judgments (5 ed.) p. 2453, § 1183; Nelson v. First Nat. Bank of Killingley (C. C.) 70 F. 526. Inferentially supporting this proposition and of interest here are La Crosse & Minn. S. P. Co. v. Reynolds, 12 Minn. 135 (213); Kelly v. McKeown, 151 Minn. 525, 184 N. W. 273. In other jurisdictions where the question has been considered, a similar decision has been reached. Kincaid v. Conly, 62 N. C. 270; Cox v. Bank of Hartsville (Tenn.) 63 S. W. 237; Wade v. Watson, 133 Ga. 608, 66 S. E. 922.

Defendant makes some point of the fact that the effect of setting aside this judgment would be to vacate an industrial commission decision. We submit that this is not an obstacle, inasmuch as the specific statute providing for entry of judgment upon default in payment of compensation benefits contains the provision that such judgments "may be vacated, set aside, or satisfied as other judgments of the same court." *Id.* § 176.59 (1940 Supp. § 4318). It is settled that fraudulent judgments procured in lower tribunals may be set aside. Schmitz v. Martin, 149 Minn. 386, 183 N. W. 978;

Bruski v. Bruski, 148 Minn. 458, 182 N. W. 620; Maffett v. Citizens Bank, 198 Minn. 480, 270 N. W. 596.

■ If we assume, as we must here, that the allegations of Tankar's complaint are true, they are amply sufficient to state a cause of action of extrinsic fraud. Defendant contends that the opinion of this court in dismissing the case of Washel v. Tankar Gas, Inc. *supra,* was based upon the proposition that Lumbermen's was not a party to the plan of leasing the particular business operation of Tankar where the accident occurred so as to avoid the requirements of the workmen's compensation act. We cannot agree that this defendant was released from liability on that ground in the Washel case. As far as Tankar was concerned, the court found that it was the employer of deceased and hence liable to pay the benefits. In determining whether or not Lumbermen's was the insurance carrier, the court looked to the policy itself with the attached rider. Inasmuch as one of the assignments of error in the compensation case was to the effect that defendant was not its insurer for that particular place of business and the rider on its face supported this contention, naturally this court reached the only possible conclusion under the circumstances and dismissed the action as to this defendant. If there actually was coverage, the fraud resulting from the failure to so disclose leading plaintiff to believe it was properly represented gives rise to a cause of action of extrinsic fraud under equitable principles.

To entitle Tankar to the relief herein sought of setting aside the judgment complained of, it is necessary that the allegations of fraud be of an extrinsic nature and collateral to the issue tried in that action. It must be of such a nature as to prevent the unsuccessful party from having his day in court and presenting his case fully. It is well settled that intrinsic fraud is unavailing. Young v. Lindquist, 126 Minn. 414, 148 N. W. 455; Hass v. Billings, 42 Minn. 63, 43 N. W. 797; McElrath v. McElrath, 120 Minn. 380, 139 N. W. 708, 44 L.R.A.(N.S.) 505; Bloomquist v. Thomas, 215 Minn. 35, 9 N. W. (2d) 337. Tankar claims that, since Lumbermen's was its insurance carrier and undertook the defense on behalf of

both Tankar and itself, Tankar necessarily relied upon the honesty and fair dealing of its insurer and reposed confidence and trust in it; that Lumbermen's attorneys prepared the necessary pleadings and generally supervised the litigation, making the required appearances before the referee, the industrial commission, and later the supreme court; that the answers prepared and presented to Tankar for verification and filed in the initial proceedings before the referee alleged that Lumbermen's was Tankar's insurer, as did the pleadings before the industrial commission. Tankar urges that Lumbermen's act of introducing a certain rider to its insurance policy in the proceedings before the referee, which excluded the pertinent place of operation, was without Tankar's knowledge and a fraudulent attempt to relieve Lumbermen's of liability as such insurer, and that Lumbermen's application to amend its pleadings before the industrial commission so as to effect a denial of its relation as an insurer to Tankar was similarly without Tankar's knowledge or consent; that these acts, together with the fraudulent assignments of error to the supreme court, whereby it appeared on the face of the briefs filed by Lumbermen's that Tankar itself was urging that the industrial commission had erred in holding that such relation existed between the parties, constituted fraud within the meaning of § 548.14. Under the facts as stated here, which for the purpose of this appeal must be assumed, there is little doubt that they constitute extrinsic fraud within the meaning of the statute. From the allegations of the complaint it appears that Tankar relied upon Lumbermen's to protect its interests and upon its integrity as its insurer. Apparently, Tankar was lulled into a feeling of security and confidence, which was manifestly violated, with the result that Tankar was prevented from fully presenting its case and having a fair trial because of the fraud and deception practiced upon it. The facts here, therefore, bring it well within the rule of Brockman v. Brockman, 133 Minn. 148, 157 N. W. 1086; Murray v. Calkins, 191 Minn. 460, 254 N. W. 605; United States v. Throckmorton, 98 U. S. 61, 25 L. ed. 93, and the most recent ex-

pression of. this court on the subject, Bloomquist v. Thomas, 215 Minn. 35, 9 N. W. (2d) 337.

■ Defendant asserts that Tankar was guilty of contributory negligence in failing to take immediate steps to challenge defendant's course of procedure after Tankar received notice from the referee and the industrial commission apprising it of the results of the hearing before the referee and later the appeal to the commission, and cites in support of its contention Schweinfurter v. Schmahl, 69 Minn. 418, 72 N. W. 702.

We do not believe that the complaint shows as a matter of law that plaintiff was guilty of such contributory negligence as to preclude it from the relief it seeks under the statute. What the factual picture may reveal at the trial is not for us to consider. Suffice it to say that in our opinion the complaint indicates that plaintiff was free from such negligence as would bar its right to recovery.

In fairness to the attorneys for appellant, we wish to make it clear that they did not represent Lumbermen's in any of the former proceedings referred to herein.

Affirmed.

