LEO JOSEPH O'BRIEN, A MINOR, BY LEO O'BRIEN, SR., HIS FATHER AND NEXT FRIEND, APPELLANT, V. RAYMOND BARNARD ET AL., APPELLEES.

17 N. W. 2d 611

FILED FEBRUARY 9, 1945. No. 31861.

*Ray M. Higgins* and *Chambers, Holland & Locke,* for appellant.

*W. P. Lauritsen, John F. McCarthy* and *Gaines & Shoemaker, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

This is a compensation case. Plaintiff was granted an award below for injuries received in an accident arising out of and in the course of his employment. The injuries, extent thereof and disability resulting therefrom, and the amount of the award are not for review here. This appeal presents the question as to whether or not the district court erred in dismissing the defendant Larsen from the case by holding that no liability attached to him, and that he was not the employer of the plaintiff and did not, within the

meaning and contemplation of section 48-116, R. S. 1943, create and carry into operation a scheme, artifice or device which enabled him to execute work without being responsible to the plaintiff and by doing so he was, in fact and for all purposes, the plaintiff's employer.

The record discloses that Charles F. Larsen was engaged in the bulk gasoline business at Grand Island, Nebraska, by contract with Phillips Petroleum Company. He dealt in its products exclusively as its representative in a specified territory. On April 30, 1940, he leased a service station for a period of five years, with an option to renew the lease, and he was to furnish all equipment necessary to operate the station. The record does not show in what manner Larsen operated the station or that he did so. It does show that it was under the operation of other individuals before defendant Barnard leased it. Until such time the business did not progress, and Larsen suggested to Barnard, who had been an employee of his for approximately five years, that he take over the station and operate it in the same manner as the station was being operated where Barnard was then employed. Barnard was skeptical as to whether or not he could successfully operate the station and make a living, because it had been neglected and run-down, and he did not have the money to make the investment. Larsen agreed to set him up in business and furnish him the money with which to purchase a stock of merchandise. So it was orally agreed that Barnard should take over the station and the business.

Pursuant to the oral agreement, a written agreement was entered into between the parties on January 23, 1942, the effect of which was to place Barnard in the business, and he agreed to pay Larsen $1,000, to be paid at the rate of one-half cent per gallon of all gasoline delivered to the filling station until the amount was paid, with interest due. This agreement is, in effect, a note, and, according to Barnard's testimony, has been paid in full and was about half paid at the time of plaintiff's accident on January 27, 1943. The rent was fixed at one cent per gallon, and whenever a

load of gasoline was delivered such amount was charged against Barnard. The station was known as "Ray's Phillips '66'." The advertising was for the sale of Phillips products. The uniforms worn were the same as those worn at Phillips stations generally, and as suggested by its representatives and Larsen. All gasoline and Phillips products handled by Larser and sold at the station were purchased from him. The price of gasoline was set through the bulk plant, and Barnard was directed to sell such commodity at a certain specified price per gallon; the Phillips company suggested the prices on all of their other products handled, and price sheets were furnished. The company was very specific about its service and made suggestions as to how to go about it to render the proper service. Barnard was in possession of the station, and it was under his control as long as he was handling the merchandise sold by Larsen, and if anything went wrong with the business Larsen was always available as counselor to look after his own interests. The plaintiff was employed by Barnard on January 19, 1943, to work at the station after school and on Saturdays for the sum of $5 per week. Larsen was not present at the time of the employment, and plaintiff did not know him but knew of him.

Plaintiff contends that under the provisions of section 48-116, R. S. 1943, Larsen, by artifice, scheme or device, set Barnard up in business for the purpose of having an outlet for, and increased sales of, the products he handled; that to do this he advanced the money to purchase merchandise; that he owned the lease, controlled the sales of all merchandise handled by Barnard, even to the extent that, should Larsen·change from Phillips products to any other, Barnard was obliged to buy from him or quit business; furthermore, that Larsen provided for the advertisement used, suggested the uniforms to be worn; that, in a consideration of all such matters, the direct responsibility for the business was. Larsen's and he, in fact, was the owner of it and the employer of the plaintiff.

The burden of proof by a preponderance of the evidence

is on the plaintiff to prove Larsen liable, as contended for by the plaintiff. It is quite apparent that Larsen subleased the station to Barnard, the latter to pay Larsen for money advanced and a fixed rent. Larsen did not control, supervise or give any directions with reference to the management of the station or of the business. He did not share in the profits or make any suggestions affecting the business. He did not employ the plaintiff, designate the hours of work or the wages to be paid, or direct, supervise or control in any manner the plaintiff's employment, the course thereof or the duties to be performed; nor could he discharge the plaintiff.

It is true, this court, in speaking of what is now section 48-116, R. S. 1943, has said that such statutory provision did not necessarily imply fraud or evil design. *Sherlock v. Sherlock*, 112 Neb. 797, 201 N. W. 645; *Hiestand v. Ristau*, 135 Neb. 881, 284 N. W. 756. However, this does not dispense with the requirement that the plaintiff must show by a preponderance of the evidence that defendant Larsen violated the statutory provision. This the plaintiff has failed to do.

Our attention has been directed to section 4290, 1940 Supplement to Mason's Compiled Statutes of Minnesota for 1927, as being analogous to section 48-116, R. S. 1943, except that the Minnesota statute uses the term, "fraudulent scheme, artifice or device * * * ." In conjunction therewith, our attention is called to the case of *Washel v. Tankar Gas, Inc.*, 211 Minn. 403, 2 N. W. 2d 43, as being directly in point with the instant case. We are not in accord with this view. The Minnesota court said in the body of the opinion: "There is much in the lease indicating that the lessor was much interested in the business of the filling station leased, and to that end supervised, directed and counseled the lessee." There is no such evidence in the instant case. Tankar Gas, Inc., handled gasoline and petroleum products, wholesale and retail; it leased 16 stations and operated six more as owner. The court stated that the corporation supervised the leased stations much the same

as the six stations which it operated itself. While there is some evidence in the instant case that Larsen leased certain stations and likewise operated stations, it is not shown by the evidence very clearly what stations he leased or operated, except that he leased the station involved in this action, and the record fails to show that the station leased, operated and controlled by Barnard was operated in the same manner as any station owned, leased or operated by Larsen.

We are driven to the conclusion that the plaintiff failed to carry the burden of proof as required by law. He failed to show a violation of section 48-116, R. S. 1943, and failed to show that the relationship of employer and employee existed between Larsen and the plaintiff.

AFFIRMED.