INTERNATIONAL TRUST COMPANY v. AMERICAN LOAN & TRUST
COMPANY and Others.[1]

Nov. 22. 1895.

62  501.
72  275:

Nos. 9528—(50).

### Annuity, Safe-Deposit and Trust Companies—Liability of Stockholders.

An annuity, safe-deposit, and trust company organized under Laws 1883, c. 107 (G. S. 1894, § 2841 et seq.), is not a corporation "embracing banking privileges," within the meaning of the constitution of Minnesota, article 10, § 1. That term refers only to banks of issue or circulation provided for in article 9, § 13. Hence the stockholders of annuity, safe-deposit, and trust companies are liable, under article 10, § 3, of the constitution, for corporate debts to the amount of stock held or owned by them.

### Appointment of Receiver under G. S. 1894, c. 76—Prior Assignment for Benefit of Creditors.

Where a general assignment of all the corporate assets for the benefit of creditors has been made, either under the assignment law of 1876 or the insolvency law of 1881, creditors who subsequently commence an action, under G. S. 1878, c. 76, § 9 (G. S. 1894, § 5897), are not entitled, as a matter of right, to have a receiver appointed to supersede the assignee, and take the possession and administration of the corporate assets out of his hands.

### Enforcement of Liability of Stockholders.

But, although they have no right to have a receiver appointed, they may maintain such an action for the purpose of enforcing the personal liability of stockholders, such liability being one which cannot be enforced in the assignment proceedings.

On Reargument, December 24, 1895.

### Stockholders' Liability—Action to Enforce—Pleading.

A complaint in an action under G. S. 1894, § 5897, to sequester corporate assets, and to enforce the constitutional liability of stockholders, which alleged, as to the stockholders, "that defendants now are or heretofore have been owners or holders of the shares of the stock of said company, and constitute and comprise all of the stockholders of said company," did not state a cause of action as against any stockholder separately demurring, since it did not show that any one defendant was a stockholder when the corporate debt in suit was contracted, or at any subsequent time.

[1] Reported in 65 N. W. 78, 632.

Appeals by plaintiff from orders of the district court for St. Louis county, Ensign and Lewis, JJ., respectively sustaining demurrers to the complaint and denying a motion for the appointment of a receiver. Affirmed.

*James Spencer* and *Towne & Davis*, for appellant.

*Billson, Congdon & Dickinson* and *J. L. Washburn*, for respondents.

MITCHELL, J. The plaintiff, on behalf of itself and all other creditors of the defendant corporation, brought this action under G. S. 1878, c. 76, § 9 (G. S. 1894, § 5897), to sequester the corporate assets, and to enforce the constitutional liability of the stockholders for corporate debts. The stockholders severally demurred to the complaint, on the ground that, as to them, it did not state a cause of action. The court sustained the demurrers. The court also denied plaintiff's application for the appointment of a receiver of the corporate assets. Plaintiff appealed from both orders.

1. The American Loan & Trust Company is an annuity, safe-deposit, and trust company, organized under Laws 1883, c. 107 (G. S. 1894, §§ 2841–2854, and the ground of the stockholders' demurrers is that, such corporations not being banks of issue or circulation, the provisions of article 9, section 13, of the constitution of the state are inapplicable; that, although not banks of issue, they are corporations "embracing banking privileges," within the meaning of article 10, section 1, of the constitution, and therefore the provisions of section 3 of the same article are also inapplicable, and hence that no personal liability for corporate debts is imposed by the constitution upon the stockholders of such corporations. It is conceded that there is no statutory liability, and it is clear that article 9, § 13, is inapplicable, for that relates solely to banks of issue.

Article 10 is as follows:

"Section 1. The term 'corporations' as used in this article shall be construed to include all associations and joint-stock companies having any of the powers and privileges not possessed by individuals or partnerships, except such as embrace banking privileges." * * *

"Sec. 3. Each stockholder in any corporation (excepting those organized for the purpose of carrying on any kind of manufacturing or

mechanical business) shall be liable to the amount of stock held or owned by him."

The line of argument, briefly stated, is about this: Annuity, safe-deposit, and trust companies, in addition to their other numerous powers, have power to receive general deposits of money, to loan or invest the moneys so deposited, as well as their own capital, on mortgages, or by purchasing bills, notes, and other evidences of indebtedness; that these are banking privileges; therefore, that these corporations are associations having or "embracing banking privileges," within the meaning of the constitution. It is always an unsafe way of construing a statute or contract to divide it, by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascertained from the context, the nature of the subject treated of, and the purpose or intention of the parties who executed the contract, or of the body which enacted or framed the statute or constitution.

The constitution of the state must be read and construed as a whole. In article 9 it provides for and treats of corporations authorized to issue their notes to circulate as money, commonly called "Banks of Issue or Circulation." In article 10 it proceeds to treat of other corporations, and in the first section it defines the sense in which the term "corporation" is used in that article, to wit, "All associations and joint-stock companies having any of the powers and privileges not possessed by individuals or partnerships, except such as embrace banking privileges." This exception was, in our opinion, intended to include only those corporations already treated of in article 9, to wit, "banks of issue or circulation." The use of the term "privileges," to the exclusion of the term "powers," is significant. A privilege, as distinguished from a mere power, is a right peculiar to the person or class of persons on whom it is conferred, and not possessed by others. As applied to a corporation, it is ordinarily used as synonymous with "franchise," and means a special privilege conferred by the state, which does not belong to citizens generally of

common right, and which cannot be enjoyed or exercised without legislative authority.    Corporations usually possess many powers which are not franchises or privileges in that sense.    The right to receive money on general or special deposit, to lend money on securities, to discount or purchase bills, notes, or other evidences of indebtedness, are not franchises or privileges.    No legislative authority is necessary to authorize a person or partnership to engage in such kinds of business.    The right to do so belongs to all citizens of common right.    Now, while banks of issue may have the power to do all these things, the only franchise or privilege which they possess, aside from the mere right to exist and act as a corporation, is that of issuing their notes for the purpose of circulation as money.    It was this right and this class of corporations that the framers of the constitution evidently had in mind in using the term "banking privileges."    Under defendants' construction, all that any corporation would have to do in order to avoid a personal liability of stockholders for corporate debts would be to include in the enumeration, in its articles of association, of the purposes for which it was organized, the receipt of money on deposit, lending money on security, buying or discounting bills and notes, or anything else usually carried on by banks and bankers as a branch of their business, whether banks of deposit, of discount, of circulation, or all three combined.    Any such construction would render the provisions of article 10, section 3, absolutely nugatory.    This fact would not, of itself, warrant a construction of a constitutional provision which it will not reasonably bear, but it is a fact which it is entirely proper to consider in ascertaining the meaning of the framers of the constitution.    Our conclusion is that the defendant corporation is not one "embracing banking privileges," within the meaning of the constitution, and therefore that, under article 10, section 3, the stockholders are liable for corporate debts to the amount of stock held or owned by them.

2. It was alleged in the complaint that the American Loan & Trust Company, being wholly insolvent, and unable to pay its debts, had before the commencement of this action made an assignment of all its property and effects for the benefit of its creditors to an assignee. This assignment was made pursuant to the provisions of Laws 1876, c. 44 (G. S. 1894, §§ 4227–4239).    Upon plaintiff's motion for the appointment of a receiver, it was also made to appear that the assignee

had qualified, entered upon the execution of the trust, and had taken possession of all the corporate assets, and was holding and administering them in accordance with the terms of the assignment, and under the direction of the court.   There was therefore at that time nothing for a receiver to administer on, unless this action supersedes the deed of assignment, and would entitle the receiver, if appointed, to take the possession and administration of the corporate assets out of the hands of the assignee.

That an action under chapter 76 would not per se supersede a prior general assignment for the benefit of creditors was impliedly held in Olson v. Cook, 57 Minn. 552, 59 N. W. 635, and expressly held in Walther v. Seven Corners Bank, 58 Minn. 434, 59 N. W. 1077.   See, also, Klee v. E. H. Steele Co., 60 Minn. 355, 62 N. W. 399.   The reason is that, so far as the corporate assets are concerned, exactly the same result can be accomplished by their administration by the assignee under the direction of the court as by the appointment of a receiver in an action under chapter 76.   In Walther v. Seven Corners Bank, supra, it was held that, while the court might, for good cause, remove or supersede the assignee, or even consolidate the two proceedings, yet a plaintiff in an action under chapter 76 had no unqualified right to have a receiver appointed to take the corporate assets out of the hands of the prior assignee.   It is true that in the cases cited the assignments were made under the insolvency act of 1881, and not under the assignment act of 1876; but this is immaterial, for, under either, the corporate assets are administered and distributed among creditors in the same way, and under the same supervision by the court.   It follows that, until something is realized by an enforcement of the stockholders' liability, there will be no occasion for the appointment of a receiver in this action.

But, although there are now no assets upon which a receiver can administer, still this action can be maintained, for the purpose of enforcing the statutory liability of stockholders, by having determined the maximum liability of each, and then await the result of the assignment, to ascertain how much of this liability it will be necessary to enforce by execution.   This personal liability of stockholders is not a corporate asset, and cannot be enforced through an assignment, either under the act of 1876 or under that of 1881.   Olson v. Cook, supra.

The result is that the order sustaining the demurrers to the complaint is reversed, and the order refusing to appoint a receiver is affirmed.

The following supplementary opinion was filed December 24, 1895.

MITCHELL, J.    Upon the application for a reargument our attention was called to the fact that we had overlooked one objection made to the sufficiency of the complaint.    This may be accounted for from the fact that the point was not argued orally, and not referred to except in the brief of one of the defendants.

As shown by the amended return, the allegations of the complaint are that "defendants now are, or heretofore have been, owners or holders of the shares of the stock of said company, *and constitute and comprise all of the stockholders of said company.*"    The defendants interposed separate demurrers to the complaint.    It does not appear from these allegations that any particular defendant was a stockholder at the time any of the existing debts of the corporation were contracted, or at any time since.    It may be inferred from the words italicized that the defendants include all persons who were stockholders at the time the action was commenced, and also, perhaps, all who had ever been stockholders at any time.    But it does not follow from this that any single defendant was a stockholder when the corporate debts were contracted, or at any subsequent time.    He might have been a stockholder at one time, but ceased to be such before any existing corporate debts were contracted.    Hence, under any view of the law, the complaint does not state a cause of action against any one of the defendants.    The question who are liable for corporate debts—whether only those who are stockholders when the action is commenced, or also those who were stockholders when the debt was contracted, as well as those who subsequently became such—is not involved on this appeal, and we decline to express any opinion upon it.

The order heretofore made reversing the order sustaining the demurrers to the complaint is vacated, and in place thereof it is now ordered that both of the orders appealed from be affirmed.