RUSSELL H. WARREN v. WALTER MARSH.[1]

October 15, 1943.

No. 33,488.

[1]Reported in 11 N. W. (2d) 528.

*Murphy, Johanson & Winter,* for appellant.
*A. M. Gunn,* for respondent.

YOUNGDAHL, JUSTICE.

This is an appeal by defendant from an order of the district court of Todd county granting a new trial on the ground of an error of law in overruling plaintiff's objection to the question whether he had pleaded guilty in justice court to a charge of careless driving.

On July 8, 1942, at about 3:45 p. m., on state highway No. 27 near Osakis in Todd county, a head-on collision occurred between an automobile driven by defendant and one driven by plaintiff. The highway running along the south shore of Lake Osakis makes several *S* turns. The impact occurred at the crest of a curve in the highway where, in order to follow the contour of the road, it was necessary for both drivers to make a rather sharp turn. Plaintiff, who had been traveling in a northwesterly direction, turned west for a short distance and was about to continue along the curve in a sharp southwesterly direction. Conversely, defendant, who had been traveling in a northeasterly direction, in order to negotiate the curve, would have been required first to turn east for a short space and then sharply to the southeast, but at the time of the collision he had not commenced to make the turn. After the impact, his car was facing in a northeasterly direction headed toward the lake.

The highway was of black-top or tarvia construction. The actual traveled portion at the place of impact was only about 20 feet, although the tarvia portion was somewhat wider. The reason for the reduced width was that for some distance along the outer edge of the tarvia, on the north side of the road, near the place of the accident, there was a deposit of sand and gravel varying in depth from one-half to four inches, which at the immediate situs of the collision was three feet in width. There was a white stripe about five inches in width, which had become somewhat indistinct, painted along the center of the highway, although there was some dispute as to whether it was in the exact center of the road. An engineer for plaintiff testified that because of the location of the sand and gravel on the north side of the highway there was in reality a space of only 8.6 feet from the edge of the traveled portion to the white stripe on the north half of the road, where plaintiff was traveling, while there was a space of 11.4 feet from the stripe to the edge of the traveled portion on the south half of the road, where defendant was traveling. A state patrolman testifying for defendant stated that the width of the traveled portion was 24 feet and that at the place of the accident the portion of the highway to the north of the white stripe, on which plaintiff was traveling, was 13½ feet, while the portion of the highway to the south of the white stripe, where defendant was traveling, was 10½ feet. In this computation, apparently the officer did not take into consideration the sand and gravel on the north side of the highway which reduced the width of the traveled portion of the road. The highway at the point of collision sloped up in a disk-like contour toward the north side. This created a situation where anyone making the turn in the highway to the southwest would naturally be crowded toward the center of the road. After the collision, defendant's automobile was headed northeasterly, and, with the exception of the front end, which was about four inches on the south side of the stripe, it was almost completely on the north side of the stripe, no effort, apparently, having been made to negotiate the turn. The highway patrolman testified that the left front wheel of plaintiff's automobile was

on the stripe, or, at the most, one inch over it, while the left rear wheel was about ten inches to the south of the stripe. Brake marks were visible about ten feet in length to the rear of plaintiff's automobile. No brake marks were in evidence at the rear of defendant's automobile.

Plaintiff was rendered unconscious as a result of the collision and sustained serious injuries, among which were two broken kneecaps and an injury to his head. He was taken to the doctor's office at Osakis shortly after the accident. After his removal from the scene, state patrol officers arrived and from an inspection of the positions of the respective automobiles determined that a charge of failing to drive on his right half of the road should be placed against both plaintiff and defendant. Defendant pleaded guilty before the justice of the peace at Osakis later in the afternoon. During the evening, while plaintiff was lying on a cot in the doctor's office suffering intense pain, the officers called on him and informed him that defendant had pleaded guilty to a charge of failing to drive on his right half of the road, and that if plaintiff cared to do so the officers would call the justice and see if arrangements could be made to hold a court session. Plaintiff stated that he thought defendant was more to blame than he was, but said, "let's get it over with." Because of his condition after the accident, plaintiff was not able to observe the position of the automobiles on the highway, nor did he have the benefit of advice of counsel. The justice was notified, and a session of court was held in the doctor's office at ten p. m. with plaintiff in bed still in pain from the effects of the accident. Plaintiff pleaded guilty and was fined $9.75, including costs. The next day he was taken to a hospital in Minneapolis, where he remained for a number of days. During the first part of his stay at the hospital opiates were administered to him and visitors prohibited because of his condition. Some time later plaintiff attempted to set aside the proceedings had in justice court, but without avail, and the time to appeal from the justice court conviction expired.

Plaintiff then commenced this action for damages, alleging negligence on the part of defendant. Defendant counterclaimed, and the case went to trial with the usual issues of negligence, contributory negligence, and proximate cause involved. At the trial defendant's counsel asked plaintiff whether or not he had pleaded guilty in justice court to a charge of careless driving. Plaintiff objected on the ground that the statute prohibits such testimony from being elicited in a civil case. It will be noted that the question put to plaintiff was whether he had pleaded guilty to a charge of careless driving, whereas the charge to which he had pleaded guilty was failing to drive on his right half of the highway. The court admitted the testimony, and a verdict was returned for defendant, the jury writing into the verdict the statement, "Both parties guilty of negligence." Plaintiff moved for a new trial on the ground of an error of law in receiving the testimony. The court granted the motion and ordered a new trial on this ground.

The principal question on this appeal is whether under the highway traffic regulation act, Minn. St. 1941, § 169.94, subds. 1 and 2 (Mason St. 1940 Supp. §§ 2720-288, 2720-289), this evidence was admissible, and, if not admissible, whether plaintiff waived the error, and further, whether any prejudice resulted therefrom.

■ Section 169.94 provides:

"RECORD OF CONVICTION. Subdivision 1. **Not admissible as evidence.** No record of the conviction of any person for any violation of this chapter shall be admissible as evidence in any court in any civil action.

"Subdivision 2. **Not to affect credibility as witness.** The conviction of a person upon a charge of violating any provision of this chapter or other traffic regulation less than a felony shall not affect or impair the credibility of such person as a witness in any civil or criminal proceeding."

Defendant asserts that the statute is inapplicable to an oral plea of guilty and that the testimony was admissible as an admission against interest, under such cases as Klein v. Pasch, 153 Minn. 291,

190 N. W. 338; Wischstadt v. Wischstadt, 47 Minn. 358, 50 N. W. 225; Jankowski v. Clausen, 167 Minn. 437, 209 N. W. 317. We quite agree that, the statute aside, such a question would be proper as an admission against interest. The legislature, however, in our opinion, has closed the door to an inquiry into a violation under the traffic act in any civil action. The unusual procedure involved in the instant case, so far as the placing of the charge and the hearing before the justice is concerned, presents ample and sufficient justification for such a statute. Under the facts disclosed by the record, we do not believe that the officers were justified in placing a criminal charge against plaintiff. As far as he is concerned, the only fact upon which the officers could base such a charge was that after the accident the left rear wheel of his automobile was ten inches to his left or to the south of the white stripe. His left front wheel was practically on the line. This at the most could have been but a technical violation. It must be borne in mind, however, that the officers did not see the accident. At the time they decided to place the charge they had not discussed the accident with plaintiff. When they arrived at the scene plaintiff was at the doctor's office severely injured. They based their charge solely upon an inspection of the position of plaintiff's automobile after the accident had occurred. *Id.* § 169.18, subd. 2 (§ 2720-183) provides: "each driver shall give to the other at least one-half of the *main traveled portion of the roadway, as nearly as possible.*" (Italics supplied.) It is apparent that in placing the criminal charge the officer completely overlooked the fact that the main traveled portion of the highway on plaintiff's side of the road was reduced by virtue of the deposit of sand and gravel, and the other conditions involved. We doubt the propriety of placing a criminal charge against plaintiff under these circumstances, especially when one considers the contour of the curve, the spread of the sand and gravel to the extent of three feet in width on the north side of the road, and the down slope of the highway toward the center. In saying this we are not passing on the merits of the civil case. We are merely discussing

the propriety, under the facts disclosed, of placing the criminal charge.

The accident happened about 3:45 in the afternoon. The hasty and ill-advised proceeding before the justice of the peace was conducted at ten p. m. that night, when plaintiff, in bed in the doctor's office, was suffering from the effects of serious injuries. He was in no physical or mental condition rationally to consider or discuss the charge which had been placed against him. He did not have the benefit of advice of counsel. For lack of opportunity to make a personal observation, he knew nothing of the position of the automobiles on the highway. He was unconscious when taken to the doctor's office after the collision. It is apparent that in entering his plea of guilty he relied principally upon what the officer told him. Conducting a court session under the circumstances thus disclosed, even though it involved merely a misdemeanor under the state highway traffic regulation act, is no credit to the administration of justice and violates those requirements of fair play which should characterize all trials, regardless of the amount involved or the seriousness of the charge. It is a matter of common knowledge, and was so at the time of the enactment of the statute in question, that often citizens will plead guilty to minor offenses under the traffic act rather than suffer loss of valuable time and the expense of a trial. Most of the violations under the act, including the charge placed against plaintiff, are merely misdemeanors and are *mala prohibita* and not *mala se*. No moral turpitude is involved. Intention to commit a crime is not an ingredient of the offense. Because of that fact, drivers more readily plead guilty when payment of only a small fine is involved and when a conviction is generally not considered a reflection on one's character. Aware, no doubt of these circumstances and also of the frequent occurrence of procedure similar to that disclosed in the instant case, the legislature apparently concluded that a plea of guilty should not prejudice one in any way in any civil proceeding, even one involving the same facts out of which the violation of the traffic

act arose. Moreover, distinctly different issues arise in the civil case. The issues of negligence, contributory negligence, and the proximate relation of the violation of the statute to the accident are not involved in the criminal proceeding, whereas they are important issues in the civil case. Defendant relies on the technical wording of § 169.94, subd. 1 (§ 2720-288). He asserts that the phrase "record of the conviction" does not apply to an oral plea of guilty. Such a conclusion we believe results in too narrow a construction of the statute and fails to take into consideration the general purpose of the provision. The word "conviction" includes a plea of guilty as well as a finding of guilty. It is so considered under the justice court provisions of the statute. *Id.* § 633.09 (Mason St. 1927, § 9118), which relates to criminal procedure before a justice of the peace, provides:

"If the accused pleads guilty to such charge, the court shall thereupon *convict* him of the offense charged and render judgment thereon." (Italics supplied.)

Section 633.18 (1940 Supp. § 9127) provides:

"When the accused is tried under the provisions of this chapter, and found guilty, or is *convicted* on a plea of guilty, the justice shall render judgment * * *." (Italics supplied.)

The term "conviction" is also generally considered to include a plea of guilty as well as a finding of guilty after trial. See 9 Wd. & Phr. (Perm. ed.) p. 594. We have repeatedly held that statutes are to be construed so as to give effect to their purpose. 6 Dunnell, Dig. & Supp. § 8939, and cases cited. The fundamental aim is to ascertain and give effect to the intention of the legislature. *Id.* § 8940. See also Merritt v. Stuve, 215 Minn. 44, 50, 9 N. W. (2d) 329; Tankar Gas, Inc. v. Lumbermen's Mut. Cas. Co. 215 Minn. 265, 270, 9 N. W. (2d) 754. In these cases we cited and approved the language of Mr. Justice Mitchell in International Trust Co. v. American L. & T. Co. 62 Minn. 501, 503, 65 N. W. 78, 79, 632, as follows:

"* * * It is always an unsafe way of construing a statute or

contract to divide it, by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascertained from the context, the nature of the subject treated of, and the purpose or intention of the parties who executed the contract, or of the body which enacted or framed the statute or constitution."

Applying that test of construction to the statute under consideration, we have no hesitancy in arriving at the conclusion that the legislature intended to prohibit the asking of the very question put to the plaintiff in this case as to whether or not he had pleaded guilty in justice court to a violation of the state highway traffic regulation act.

■ Defendant contends that even though the court was in error in permitting this question to be asked, plaintiff waived the error by his interrogation of the witnesses concerning the circumstances of the trial before the justice. We feel this contention is not well taken. Waiver is the voluntary relinquishment of a known right. Plaintiff made timely objection to the question and protected his record. After the adverse ruling by the court, there was nothing for plaintiff to do but to make the best of the situation and endeavor to explain the circumstances surrounding the plea. This did not constitute waiver on his part.

■ Defendant further asserts that no prejudice resulted to plaintiff as a result of this question, especially in view of the explanation made of the circumstances surrounding the plea. The trial judge is in a more favorable position to determine this than we. He concluded that plaintiff was prejudiced because of the error committed. In his memorandum attached to the order granting a new trial he said: "The mere asking of such a question might tend strongly to prejudice a plaintiff before a jury. This case strongly

illustrates that danger." We agree with the trial court.

The chief issue in the case, which was sharply contested, was whether or not the highway traffic regulation act had been violated by plaintiff in failing to travel on his right half of the highway. Evidence that plaintiff had pleaded guilty to the charge in justice court might be the very thing which would sway the jury in arriving at its conclusion that plaintiff was guilty of contributory negligence. We therefore are of the opinion that the lower court properly granted a new trial on the ground that it was error to permit plaintiff to be interrogated as to the proceedings in justice court.

In the motion for a new trial it was claimed that the asking of the question constituted misconduct of counsel. In fairness to counsel for defendant, we should like to state that we do not consider it misconduct for him to have asked the question at the trial. The interpretation of the statute presented a new problem. This court had not yet passed on the question. The issue was troublesome even to the trial judge, and we feel therefore that there was nothing improper in counsel seeking an interpretation consistent with his theory of the law.

Order affirmed.

MR. JUSTICE LORING, absent because of accidental injuries, took no part in the consideration or decision of this case.