315 P.2d 277

**UTAH FARM BUREAU INS. CO., a Utah corporation, Plaintiff and Respondent,**

**v.**

**Rex K. CHUGG, Defendant and Appellant,**

**Willard A. Larsen et al., Defendants.**

**No. 8621.**

Supreme Court of Utah.

Sept. 5, 1957.

---

Willard A. Larsen, one of the defendants in this suit, had commenced an action against Rex K. Chugg for personal and property damages arising out of an automobile accident. One of the terms of the policy issued by the Utah Farm Bureau Ins. Co. required it to defend any suits brought against the insured. It refused to defend the suit against Rex K. Chugg. The Insurance Company then brought the suit for the declaratory judgment appealed from herein in which it sought to have the court determine that under the provisions of the policy issued it was not obligated to defend the suit because Chugg at the time of the accident was driving under the influence of alcohol and therefore the coverage under the policy was suspended by virtue of its exclusion clause, Section (i).

At the trial of this action there was admitted in evidence testimony that shortly after the accident a sample of Chugg's blood was taken from him while he was unconscious and in no condition to object. Evidence was also introduced of Chugg's guilty plea to a charge of drunken driving arising out of this accident.

E. F. Ziegler and Bullen & Olson, Logan, for appellant.

C. N. Ottosen, Salt Lake City, for respondent.

WADE, Justice.

The Utah Farm Bureau Insurance Company brought a suit for a declaratory judgment to determine its rights under an automobile insurance policy it had issued to Rex K. Chugg, appellant herein. This policy contained an exclusion clause which suspended all coverage when the car was being operated by a driver who was "under the influence of alcohol."

The policy did not comply with the provisions of Sec. 41–12–21, U.C.A. of our Motor Vehicle Safety Responsibility Act, and the policy had never been filed for approval with our State Insurance Commissioner as required by law. The State Insurance Commission stipulated, however, that had the policy been filed it would have

shown no violation of any provision of the State Insurance Code and it would have been approved.

It was also disclosed by the evidence that Chugg had never been required by the Division of Safety and Financial Responsibility of this state, prior to this accident, to show proof of financial responsibility.

The court found that Chugg was intoxicated while he was driving the automobile at the time of the collision, and therefore under the terms of the policy neither he nor any third party were covered by any of its provisions. The court further concluded that our Safety Responsibility Act and its provisions did not apply to the policy involved herein because no proof of financial responsibility had been required of Chugg by the division of Safety and Financial Responsibility of the Department of Public Safety prior to the issuance of this policy.

■■ The provisions of Sec. 21 of our Motor Vehicle Safety Responsibility Act, Chap. 71, Laws of Utah 1951, and Title 41, Chap. 12, U.C.A.1953, apply only to those policies required by the department to be furnished as proof of financial responsibility after the owner or operator has been involved in an accident or has violated the motor vehicle laws. This is apparent from the title of the Act, which reads:

"An Act to be Entitled the Motor Vehicle Safety Responsibility Act, Providing for Giving Proof of Financial Responsibility by Owners and Operators of Motor Vehicles Violating the Motor Vehicle Laws of the State of Utah or involved in an Accident in Which Damages Result in Excess of $100, Requiring the Giving of Security for the Payment of Damages; Providing for the Suspension of Operators Licenses and Registration Certificates Until Such Security Is Furnished; * * *".

It being conceded that the policy was not issued because Chugg had been required by the Commission to furnish proof of financial responsibility in conformance with the Act, it follows that the provisions of the Act do not apply to it. Unless Chugg had been within the purview of the Act when the policy was issued, its provisions, unless illegal, are subject to the same construction as any other contract, in accordance with the expressed intent of the parties. Here the contract clearly provided that there would be no coverage if the accident occurred while Chugg was intoxicated when he was driving. See McCann for Use of Osterman v. Continental Casualty Co., 6 Ill.App.2d 527, 128 N.E.2d 624, on page 627, wherein the court in deciding whether a policy was subject to the provisions of their Financial Responsibility Act S.H.A. ch. 95½, §§ 58b–58k which is similar to our Act said:

" * * * The provisions of the Financial Responsibility Act of Illinois are not applicable unless the insured has by his previous conduct brought himself within its purview. There was no evidence in the record that the insured had had a previous accident or that there was any unsatisfied judgment growing out of an accident against him, nor is there any contention that in any way by his previous conduct the insured came within the scope of the Act. Only if his prior conduct had been such that he was required to make proof of financial responsibility under the Act would the provisions contained in paragraph 58k have been of necessity, under clause 8 of the policy, incorporated therein." See also Minn.Law Review, Vol. 33, pages 525–527.

■ Appellant contends that the court erred in admitting testimony about the alcoholic content of a blood sample over his objection because there had been insufficient foundation laid identifying the blood sample analyzed as being his blood. We agree. The only evidence introduced was that of the medical technician of the hospital to which Chugg was taken after the accident who testified as to the alcoholic content of a blood sample which she said was Chugg's. However, she admitted she did not draw the sample from Chugg nor was she present when it was taken. There was no evidence as to how, when or from whom she obtained the sample nor from what information she concluded that the specimen she ran belonged to Chugg. From a notation in her record book she stated that the doctor who attended Chugg drew the blood specimen. This doctor testified he could not remember whether he personally drew the sample, that usually the laboratory technician draws the blood. Neither could he remember to whom the blood specimen was given after it was drawn. No attempt was made to introduce in evidence the specimen allegedly taken from Chugg. Nor was there evidence that the specimen was labeled or sealed and if so by whom before it was turned over to the laboratory. Clearly there is a lack of necessary evidence linking the sample analyzed with the blood sample drawn from Chugg and is therefore insufficient to identify the blood sample as being that of Chugg. See Novak v. District of Columbia, 82 U.S.App. D.C. 95, 160 F.2d 588; State v. Weltha, 228 Iowa 519, 292 N.W. 148; State v. Werling, 234 Iowa 1109, 13 N.W.2d 318; Abrego v. State, 157 Tex.Cr.R. 264, 248 S.W.2d 490; 20 Am.Jur.Cum.Supp.1956, 114, Evidence, Sec. 876, note to page 737 and 159 A.L.R. pages 212 and 224 as to necessity for satisfactorily identifying specimen of blood used in analysis as that belonging to the person whose intoxication is in question, in both criminal and civil cases.

404

■ Appellant also contends that the court erred in admitting in evidence as an admission against interest a plea of guilty to drunken driving by Chugg in a criminal proceeding arising out of the accident involved herein because Sec. 41-6-170, U.C.A.1953, provides that:

"No record of the conviction of any person for any violation of this act shall be admissible as evidence in any court in any civil action." (Uniform Act Regulating Traffic on Highways.)

We agree. The above quoted statute clearly prohibits the admission in evidence of a record of conviction of a violation of the Uniform Act Regulating Traffic on Highways. A plea of guilty is as much a conviction as a verdict and judgment to that effect and therefore under the provisions of this statute should not have been admitted in evidence. See State v. Jensen, 74 Utah 299, on page 303, 279 P. 506, on page 507, wherein this court in deciding that it was error to admit in evidence a plea of guilty subsequently withdrawn on the ground that it was in the nature of a confession or an admission against interest quoted with approval the following from Kercheval v. U. S., 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009:

" ' * * * A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. * * * ' "

Also see Warren v. Marsh, 215 Minn. 615, 11 N.W.2d 528; 18 A.L.R.2d 1311, note 16.

The only other evidence that Chugg was intoxicated was the testimony of a deputy sheriff who put his head inside Chugg's car shortly after the accident where he saw an empty bottle and Chugg lying on the seat and smelled liquor. He testified that Chugg was "kind of throwing his body around," "his eyes were kind of rolling" and "he was trying to talk" but "you just couldn't understand what he was saying." This officer testified "from the smell, I imagine he had been drinking quite a bit." He only saw Chugg for about a minute and did not see him walk at all. When further pressed he said, "the only thing I can say is that I could smell it in the car," and from all these things "I presume he was intoxicated." On cross-examination this witness admitted that he heard the doctor testify "that when he arrived there Mr. Chugg was unconscious," and "as far as he knew he didn't recover consciousness until he had been in the hospital for a while" and "that he was suffering from pronounced shock," and the officer further testified that Chugg's actions "could be the result of pronounced shock."

■ There is nothing about this testimony to indicate that Chugg was more

probably intoxicated than not, or which constitutes substantial evidence from which intoxication can be reasonably inferred. Clearly the actions which the witness described indicate that he had been rendered unconscious by the accident and was in pronounced shock. The witness clearly indicated that he considered Chugg's actions of throwing his body, rolling his eyes and his incoherent talk could have been the result of such unconsciousness and pronounced shock and not of intoxication. Twice he expressly limited the grounds for indicating that Chugg might be intoxicated to the smell of liquor in the car. Obviously he did not observe sufficient actions of Chugg on which to base an opinion that he was intoxicated. The fact that there was an empty bottle in the car and the smell of liquor are not sufficient to support a finding of intoxication. See State v. Johnson, 76 Utah 84, 287 P. 909. The court therefore erred in finding that Chugg was intoxicated at the time of the accident and in concluding that the policy was cancelled as a result thereof.

Although this action was brought for declaratory relief to determine the validity of the policy and its provisions both in relation to Chugg and to Larsen, a defendant in this suit and a plaintiff in a tort action against Chugg arising out of the accident, the court was not precluded from trying out the issue of Chugg's intoxication at the time of the accident [1] and in granting the respondent herein the affirmative relief it asked for in its complaint. As we stated in Gray v. Defa, 103 Utah 339, on page 349, 135 P.2d 251, on page 256, 155 A.L.R. 495:

"* * * [W]e believe that the Declaratory Judgment Act authorizes the courts to grant declaratory relief in conjunction with usual legal judgments and/or equitable coercive decrees. Also declaratory relief may be given in a separate proceeding where nothing but declaratory relief is sought. Admittedly, most controversies can be settled by the entry of a regular legal or equitable judgment. In such cases there is no need for declaratory relief. However, where the need does exist and the entry of a declaratory decree will serve a useful purpose in ending the uncertainty giving rise to the proceeding there is no practical or legal justification for requiring separate actions to obtain the separate forms of relief."

See also Whitmore v. Murray City, 107 Utah 445, 154 P.2d 748, Salt Lake City v. Utah Lake Farmers Ass'n, 4 Utah 2d 14, 25, 286 P.2d 773, 781, and Sec. 78–33–9, U.C.A.1953.

---

1. Anderson, Declaratory Judgments, § 178; Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000, Borchard Declaratory Judgments, 2d Ed., 397.

■ The Insurance Company should not be permitted to delay the main action of Larsen v. Chugg for the purpose of determining in advance whether it should defend Chugg in that action. Had Larsen objected to his joinder in this action, which he did not do, nor did he appear in this court to voice such objection, it would have been error to have compelled his joinder even under a most liberal view of Rule 20, Utah Rules of Civil Procedure, and we want to repel any inference which may be drawn from this opinion that one who claims to be damaged by the negligent act of another, is a proper party to an action by the insurer of the latter under a public liability policy, whereby a declaratory judgment is sought declaring the legal effect of the terms of such policy.

The "transaction" involved in this action is one between the insurer and insured, namely their contract. Such contract can be construed without reference to any liability having accrued thereunder. This being so, there is no issue of law or fact in common between the insurer and the plaintiff, or potential plaintiff, to a tort action against the insured. The tort victim has no present legal interest in the insurance contract. To drag him into the declaratory judgment action is to import into it a totally different controversy, and then assert that there are issues of law or fact in common. Indeed, if such tort victim is a proper party to the present action, then it would appear that the insurance company, and other companies similarly situated, is a proper party to a tort action against the insured—a proposition which, it is safe to assume, such companies would not espouse.

An injured party should have the right, if he desires, to have his action tried with dispatch and without regard to any dispute between the person who injured him and the latter's insurer or insurers. However, in this suit the trial court had jurisdiction of the subject matter and since Larsen failed to object to his joinder as a party in that suit and the issue was triable upon the appeal being taken, the issues were properly before us for review.

Reversed. Costs to appellant.

WORTHEN, J., concurs in the result.

McDONOUGH, Chief Justice, and CROCKETT, Justice.

We concur in the opinion of Justice WADE, but in view of the holding in this case, deem it unnecessary to consider what affirmative relief, and the extent thereof, may in a proper case be granted in a declaratory judgment action and therefore limit this concurrence to the other matters discussed in the opinion.

HENRIOD, Justice (concurring and dissenting in part).

I agree that the evidence was insufficient to show intoxication, and that it was error

to admit the record of a previous criminal trial. I cannot agree, however, that this is a proper action for a declaratory judgment. It represents a collateral suit having the effect of holding up a pending suit, to determine facts issuable therein. It is an evasion of the insurance company's written promise to defend the pending action against the claim of intoxication or other dereliction. It prosecutes the assured in the face of such promise, for which promise the assured paid and the company accepted hard earned money as a premium. Worse still, it forces the assured to the expense of defending himself against his erstwhile defender, who now tries to prove that which it was its duty to try and disprove,—the assured's intoxication. It acts as a writ of prohibition and would allow a company to take advantage of crowded court calendars, to be followed by an appeal, while the witnesses and evidence in the stalemated pending action disappear, the company becoming the beneficiary of such disappearance by relieving itself not only of its liability, but its specific covenant to defend the assured.

It is no answer to say, as does the main opinion, that it is inclined to agree with the idea that the insurance company should not be permitted to delay the action already instituted against its assured, since, as a practical matter here, such delay is fait accompli. Besides, the absurdity of such a conclusion is manifest on its face. If the two actions were allowed to proceed simultaneously under such theory, the insurance company would be talking out of both sides of its mouth by attempting to prove, under its duty to defend in the one action, that its assured *was not* intoxicated, while in the other action and at the same time, it would be attempting to prove that its assured *was* intoxicated. In my opinion, declaratory judgment legislation never was intended to effectuate such a silly and illegitimate result.

The ridiculosity of permitting the insurance company to maintain this secondary, procedural appendix under the guise of being a justiciable controversy within the declaratory judgment act, to prove a fact situation already in issue in another pending suit, is made absurdly apparent in this very case. Here the insurance company tried and did prove its own assured to be a drunkard to the satisfaction of the trial judge, who made findings to that effect, and now that we reverse the case, the selfsame insurance company is duty bound to reverse its role and do everything in its power to prove that the assured was as sober as the trial judge, under the very covenant from which unsuccessfully it attempted to extricate itself. If the insurance company were not allowed to prosecute this hybrid supplementary suit, it would have to defend and attempt to show its assured was not intoxicated, the proving of which would eliminate the insurance com-

pany's liability to the person allegedly injured by its assured. If it did so defend and it was established that the assured was drunk, the insurance company likewise would be absolved from liability under the provisions of the policy, so that by carrying out its solemn promise to defend all actions brought against the assured, groundless or not, it would lose but little and would have relieved its assured from any expense of defending himself, which the company represented it would do when it accepted the premium.