2025 UT App 38

# THE UTAH COURT OF APPEALS

PRIME INSURANCE COMPANY,
Appellee,
*v.*
KEVIN DIXON AND WBTL, LLC,
Appellees,

MICHELLE DYER,
Intervenor and Appellant.

Opinion
No. 20230932-CA
Filed March 13, 2025

Third District Court, West Jordan Department
The Honorable L. Douglas Hogan
No. 220902813

Cassandra Dawn, Attorney for Appellant

Andrew D. Wright, Andrew B. McDaniel, Axel
Trumbo, and Kaileen Balzano, Attorneys for
Appellee Prime Insurance Company

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and AMY J. OLIVER
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Michelle Dyer appeals the district court's denial of her motion to intervene in a lawsuit brought by Prime Insurance Company (Prime) against its insured—the commercial carrier company WBTL, LLC (WBTL)—and one of its covered drivers—Kevin Dixon. She also appeals the declaratory judgment entered by the district court. We conclude that the district court correctly determined that Dyer did not meet the requirements for an intervention as of right, and we therefore affirm the court's denial

of her motion to intervene. And because Dyer is a non-party to the proceedings below, we do not have jurisdiction to address any additional issues she raises on appeal.

## BACKGROUND

¶2 In the spring of 2021, Dixon was pulling a tractor-trailer for WBTL in the state of Missouri. Dyer's daughter (Daughter) was a passenger in Dixon's truck. At one point, the truck drifted off the right side of the road and ultimately overturned down the embankment. Tragically, Daughter died as a result of the accident. Several months later, Dyer filed a wrongful death lawsuit in Missouri against WBTL and Dixon, among others.

¶3 In May 2022, Prime, whose principal place of business is in Utah, brought a declaratory judgment action in Utah's Third District Court against WBTL and Dixon, seeking a determination as to Prime's coverage responsibilities under WBTL's commercial automobile insurance policy (the Policy). The complaint referenced Dyer's claims against WBTL and Dixon and sought a declaration "to determine the respective rights and obligations of [Prime] and [WBTL and Dixon] under the Policy." Prime argued that "the clear and unambiguous provisions of the Policy make it clear no coverage is provided for passengers" and that "Prime's obligations for the Accident are limited to the minimum financial responsibility obligations [of $750,000] under the MCS-90 Endorsement."[1]

---

1. An MCS-90 endorsement is attached to an insurance policy "to assure compliance by the insured, . . . as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration." *Form MCS-90*, Fed. Motor Carrier Safety Admin., U.S. Dep't of Transp. 2 (rev. 2024), https://www.fmcsa.dot.gov

(continued…)

¶4 Neither WBTL nor Dixon responded to Prime's complaint, and default was entered as to each. Prime then moved for default judgment, and the district court granted the motion. The court entered a final declaratory judgment, which included the following provisions regarding Prime's responsibilities under the Policy as they related to Daughter's injuries and death:

> There is no coverage under the plain language of the Policy for any claims arising from the injuries or death of [Daughter] as [Daughter] was a passenger . . . and not an employee of WBTL.
>
> . . . Prime's obligations for coverage for any claims arising from the injuries or death of [Daughter] due to the Accident are limited to the minimum financial responsibility obligations under the MCS-90 Endorsement.
>
> . . . In the event Prime is required to make any payments on [claims brought related to Daughter] under the MCS-90 Endorsement as a result of the Accident, WBTL has an obligation to reimburse Prime for those payments.

¶5 A few months later, Dyer moved to intervene in the case and set aside the declaratory judgment. First, she argued that she

------

/sites/fmcsa.dot.gov/files/2024-08/MCS-90%20Form.pdf [https://perma.cc/JR7Y-P7VN]. Under the endorsement, the insurer generally agrees to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles" and the insured agrees to reimburse the insurer "for any payment that [the insurer] would not have been obligated to make under the provisions of the policy" but for the endorsement. *Id.* The statutory minimum level of financial responsibility relevant here is $750,000. *See* 49 C.F.R. § 387.9 (2023).

should be allowed to intervene under rule 24 of the Utah Rules of Civil Procedure because she "was never properly added as a necessary party in these proceedings" even though the declaratory judgment "is binding on [her] and impairs and impedes her legal interests." Specifically, she asserted that she has an interest in this action "based on the wrongful death of" Daughter and the claims brought in her Missouri wrongful death lawsuit. And she stated that the declaratory judgment in this case "would 'as a practical matter impair or impede' an ability to protect that interest by denying insurance coverage without meaningfully engaging in the legal process to determine whether such an assertion actually comports with Utah law." (Quoting Utah R. Civ. P. 24(a)(2).)

¶6     Second, Dyer argued that the declaratory judgment should be set aside under rule 60(b) of the Utah Rules of Civil Procedure. This argument was based on several reasons, including that it was a mistake for Prime to fail to join her as a necessary party, that Prime failed to properly serve Dixon, that her neglect in not filing an earlier motion was excusable, that adjudication on the merits is preferred, and that Prime "engaged in misrepresentation with the Court."

¶7     Prime opposed Dyer's motion, arguing that Dyer should not be permitted to intervene because she had not "claimed a legally protectable interest that can be impacted by the outcome of this litigation." Prime also specifically addressed each of Dyer's arguments for setting aside the declaratory judgment, concluding that such action was not warranted under any of the asserted grounds.

¶8     The district court, after hearing oral argument on the matter, ultimately denied Dyer's intervention motion. The court denied intervention because it determined that "Dyer does not have a legally protectible interest in this litigation." The court reasoned that "third parties have no standing to seek affirmative relief against an alleged tortfeasor's insurer"; that the declaratory

judgment "does not, and indeed cannot, determine the rights or duties of" Dyer; and that "the instant litigation does not impact [Dyer's] rights in any way." As to Dyer's motion to set aside the declaratory judgment, the district court determined that because it had denied her motion to intervene, "Dyer, as a non-party, ha[d] no standing or other ability to pursue" a motion to set aside the declaratory judgment.

## ISSUES AND STANDARDS OF REVIEW

¶9     Dyer appeals the district court's denial of her motion to intervene based on its determination that she did not have a legally protectable interest in the litigation. "[A] ruling on a motion to intervene encompasses several types of analysis, each subject to a different standard of review." *Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 14, 297 P.3d 599. The specific type of analysis at issue in this appeal—"whether the intervenor has claimed an interest relating to the property or transaction which is the subject of the action"—is reviewed for correctness. *Id.* ¶ 16 (quotation simplified).

¶10     Dyer raises additional challenges, arguing that the district court erred in failing to set aside the declaratory judgment and that the court lacked jurisdiction to enter the declaratory judgment. But, as we discuss below, as a non-party, Dyer is not entitled to appeal these issues, and we therefore do not entertain these additional arguments. *See Mendenhall v. Summerwood Invs., LLC*, 2024 UT App 45, ¶ 15, 548 P.3d 904.

## ANALYSIS

### I. The Motion to Intervene

¶11     Under rule 24(a)(2) of the Utah Rules of Civil Procedure, the district court must allow anyone to intervene who "claims an

interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[2] Utah R. Civ. P. 24(a)(2). Dyer contends that she possesses an interest relating to the coverage determination that is at issue in the instant case. She argues that she "wants to be able to collect her full judgment" arising from her wrongful death lawsuit and that as a result of her wrongful death claim against WBTL and Dixon in Missouri, she has "a property interest in the outcome of this litigation." We agree with the district court's conclusion that this alleged right is not a "right" sufficient to secure the right to intervene under rule 24(a)(2).

¶12 As our supreme court has explained, "a party moving for intervention must file an accompanying pleading setting forth the claim or defense for which intervention is sought" and that this pleading requires "(1) a statement of the claim showing that the party is entitled to relief; and (2) a demand for judgment for specified relief." *In re United Effort Plan Trust* (*Swallow v. Jessop*), 2013 UT 5, ¶ 38, 296 P.3d 742 (quotation simplified). If a party seeking intervention has, instead, asserted only "abstract [interests], disconnected from any demand for judgment for specified relief," then that party "lack[s] an interest in the subject

---

2. Dyer argues that "the circumstances before the court now have little guiding case law" because the Utah Declaratory Judgment Act does not include rules for joinder or intervention. But the very case on which Dyer bases her argument explains that our supreme court has exercised its constitutionally granted authority to create rules of civil procedure addressing joinder and intervention and that "[b]ecause nothing in the Act purports to modify [those rules], those rules govern." *Bell Canyon Acres Homeowners Ass'n v. McLelland*, 2019 UT 17, ¶¶ 16, 18, 443 P.3d 1212. Thus, here we are appropriately guided by the applicable rules of civil procedure and the case law interpreting and applying those rules.

matter of the dispute sufficient to sustain their intervention under rule 24(a)(2)." *Id.* (quotation simplified); *see also In re J.T.*, 2023 UT App 157, ¶ 19, 542 P.3d 517 ("[F]or an interest to qualify under rule 24(a)(2) as an interest related to the subject matter of an action, it must be a legally protectable interest, one on the basis of which the applicant for intervention articulates a demand for specified relief."). Furthermore, this court has recently stated that an "inchoate right or interest" that will become established only upon some future occurrence of events is a right that "ha[s] not yet matured into a legally protectable one that could form the basis for intervention as of right under rule 24(a)(2)."[3] *In re J.T.*, 2023 UT App 157, ¶ 24 n.7.

---

3. Dyer argues that the instant case "is *not* simply an interpretation of contract and rights or facts as relate to the named parties" but is also determining "facts and law relating to" Daughter. As an example, she points to the district court's determination that there was "no coverage under the plain language of the Policy for any claims arising from the injuries or death of [Daughter] as [Daughter] was a passenger . . . and not an employee of WBTL." But in reviewing the district court's decision, it is clear that language does not represent a factual finding the court made in the face of disputed facts about Daughter's status as a passenger in the vehicle. Instead, the court's reasoning was focused on the interpretation of the Policy and, in so doing, it reasoned that because Daughter *was* a passenger—a fact over which there is apparently no dispute considering that Dyer herself asserted as much in her complaint in the wrongful death case—Prime's coverage obligations were limited under the contractual language. And in any event, Dyer, as a non-party, is not legally bound by the district court's judgment—a point she concedes on appeal. *See generally* Utah Code § 78B-6-403(1) ("[A] declaration may not prejudice the rights of persons not parties to the proceeding."); *Bell Canyon Acres Homeowners Ass'n*, 2019 UT 17,

(continued…)

¶13   We also consider as instructive our supreme court's decision in *Utah Farm Bureau Insurance Co. v. Chugg*, 315 P.2d 277 (Utah 1957). In that case, an insurance company brought a declaratory action against its insured, seeking a determination of rights under the relevant automobile insurance contract. *See id.* at 278. A third party who had commenced a separate suit against the insured for damages resulting from an automobile accident was also joined as a defendant.[4] *See id.* at 278, 281. In reaching its decision as to the insurance contract, the *Chugg* court observed, "Had [the third party] objected to his joinder in this action, which he did not do, . . . it would have been error to have compelled his joinder . . . ." *Id.* at 281. The *Chugg* court wanted "to repel any inference which may be drawn from this opinion that one who claims to be damaged by the negligent act of another, is a proper party to an action by the insurer of the latter under a public liability policy, whereby a declaratory judgment is sought

---

¶ 13 ("[E]ven if appellants sought a declaration purporting to affect the legal interests of [any] outsiders, that declaration would have no legal effect on the outsiders unless they were joined in the action or were privies to a party joined in the action . . . .").

4. Joinder and intervention both consider whether the third party claims an interest relating to the subject matter of the current proceeding. *Compare* Utah R. Civ. P. 19(a) (providing for joinder of a third party who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . as a practical matter impair or impede his ability to protect that interest"), *with id.* R. 24(a)(2) (providing for the intervention by a third party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest").

declaring the legal effect of the terms of such policy." *Id.* The *Chugg* court further reasoned,

> The "transaction" involved in this action is one between the insurer and insured, namely their contract. Such contract can be construed without reference to any liability having accrued thereunder. This being so, there is no issue of law or fact in common between the insurer and the plaintiff, or potential plaintiff, to a tort action against the insured. The tort victim has no present legal interest in the insurance contract.

*Id.*[5]

¶14 Accordingly, we have no trouble affirming the district court's conclusion that Dyer did not, at the time of her requested intervention in Prime's declaratory judgment action, have a "present legal interest in the insurance contract" existing between Prime and WBTL. *Id.* Although she expressed that she "wants to be able to collect her full judgment" in her wrongful death case, at the time she sought intervention, no such judgment existed. Instead, it remained to be seen if a judgment in her favor would eventually materialize in that case. Thus, any interest Dyer has

---

5. Dyer questions the applicability of *Chugg* here, pointing out certain language from a dissenting opinion in the case and also asserting that the case precedes "the development of third-party beneficiary rights in a pending tort action as a transferable property right." But we, of course, cannot place more reliance on the language from a dissenting opinion than on the language incorporated into the binding majority opinion. And we fail to see how the transferability of her rights to pursue the wrongful death claim alters whether such a claim amounts to a matured legally protectable interest in the contract interpretation at issue here. As we discuss above, the unadjudicated claim itself does not meet that requirement.

based on such a hypothetical judgment was inchoate and insufficient to have given her the right to intervene in the present action. We therefore affirm the district court's denial of Dyer's motion to intervene.

## II. Additional Issues

¶15    On appeal Dyer also challenges issues beyond the denial of her motion to intervene, specifically, the district court's refusal to set aside the declaratory judgment and the district court's alleged lack of jurisdiction to enter the declaratory judgment. But, as Prime correctly maintains in its appellate briefing, because Dyer's motion to intervene was properly denied, she is not a party to this action, which means she generally is "not entitled to an appeal as of right," *Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 9, 293 P.3d 241, and may appeal only the denial of her motion to intervene, *see Millard County v. Utah State Tax Comm'n ex rel. Intermountain Power Agency*, 823 P.2d 459, 461 (Utah 1991) ("[A]n order denying a motion to intervene is a final disposition of the claims asserted by the applicant for intervention and is appealable.").

¶16    The situation here is similar to that in *Mendenhall v. Summerwood Investments, LLC*, 2024 UT App 45, 548 P.3d 904. In that case, the appellants sought review of both the district court's order denying their motion to intervene and the court's later order dismissing the underlying action. *See id.* ¶ 9. As to intervention, the *Mendenhall* court recognized that the denial of the motion to intervene was properly raised by the appellants on appeal. *Id.* ¶ 12. However, as to the challenged dismissal order, the *Mendenhall* court determined that because the appellants "were not parties to the underlying action when the action was dismissed," they were not "entitled to an appeal as of right" and the appellate court was "without jurisdiction" to consider such an appeal. *Id.* ¶ 15 (quotation simplified).

¶17    Our supreme court gave similar instruction in *Brigham Young University v. Tremco Consultants, Inc.*, 2005 UT 19, 110 P.3d 678, *overruled on other grounds by Madsen v. JPMorgan Chase Bank, NA*, 2012 UT 51, 296 P.3d 671. There, certain appellants who had moved to intervene in the underlying case (but whose motion to intervene had been denied via an oral ruling) appealed the district court's supplemental order that a previous judgment could be enforced against their assets. *See id.* ¶¶ 45–46. Notwithstanding the fact that the supplemental order contained provisions concerning the appellants, the *Tremco* court concluded, "As nonparties, they cannot appeal the supplemental order. Where an appeal is not properly taken, this court lacks jurisdiction and we must dismiss." *Id.* ¶ 46 (quotation simplified). The *Tremco* court noted that when the denial of the motion to intervene was reduced to a written order, *that* order would be subject to appeal, but the court stated that such an appeal would still not be the appropriate vehicle for challenging the validity of the supplemental order. *See id.* ¶ 46 n.7.

¶18    Dyer attempts to differentiate these cases, asserting that the jurisdictional issues fatal to those appeals were due to timeliness issues and that the cases do not limit our authority to consider issues beyond the denial of her motion to intervene. But this is simply not an accurate reading of these cases. In *Mendenall*, it is true that the notice of appeal was filed more than thirty days after the denial of the appellants' *motion to intervene* and that the appeal "from that order" was therefore dismissed because it was untimely. 2024 UT App 45, ¶ 14. But the notice of appeal *was* filed within thirty days of the district court's *order of dismissal*, making the appeal timely as to that issue. *See id.* ¶ 9. Thus, the sole jurisdictional failure mentioned as to the appeal of the underlying dismissal order was that the appellants "were not parties to the underlying action when the action was dismissed" and were therefore not entitled to an appeal as of right. *Id.* ¶ 15.

¶19    As to *Tremco*, although the appellee had raised timing issues regarding the appeal of the district court's supplemental

order—and although the court focused on these timing issues to dismiss the appeal of an appellant who *was* a party to the underlying proceedings—that was not the basis for the dismissal of the appeal brought by the non-party appellants. *See* 2005 UT 19, ¶¶ 45–47. Instead, as to those non-party appellants, the *Tremco* court made its decision based on the "even more fundamental jurisdictional problem" that they were not parties to the proceeding. *Id.* ¶ 46.

¶20    Thus, prior case law clearly establishes we are without jurisdiction to consider Dyer's appeal of issues beyond the denial of her motion to intervene.

## CONCLUSION

¶21    We determine that the district court correctly denied Dyer's motion to intervene based on the lack of a legally protectable interest. And this court does not have jurisdiction to consider Dyer's appeal as to issues beyond the denial of her motion to intervene. Affirmed.

———————